UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRADLEY S. BRESSER,
　　Plaintiff,

vs.

TOTAL QUALITY LOGISTICS, INC.,
　　Defendant.

Case No. 1:12-cv-720

Spiegel, J.
Litkovitz, M.J.

**ORDER**

This matter is before the Court on plaintiff's motion for sanctions and supplemental memorandum in support (Docs. 21, 29), TQL's response in opposition (Doc. 33), and plaintiff's reply. (Doc. 35).

**I. Background**

Plaintiff brings this action against his former employer, Total Quality Logistics (TQL), alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. and Ohio state law. The instant motion regards a discovery dispute which was the subject of an informal discovery conference held between the Court and the parties on August 29, 2013. *See* Docs. 17, 18. The dispute involves plaintiff's contention that TQL failed to tender relevant and responsive documents during the course of written discovery. Specifically, plaintiff requested all written performance evaluations of plaintiff created from November 2005 to July 2011 - the course of his employment with TQL. (Doc. 21 at 1). Plaintiff asserts TQL conducted biannual employee evaluations and, consequently, he anticipated receiving approximately a dozen evaluations but TQL produced only two – one from the end of 2007 and the other from mid-2008. *Id*. at 1-2.

During the informal discovery conference, counsel for TQL represented to the Court that: all existing performance evaluations for plaintiff had been produced and that TQL had notified

him that it was unable to locate any other evaluations. *See* Doc. 18 at 1. Given the discrepancy in the number of evaluations produced and the number that should have been, on August 20, 2013, the Court ordered TQL to provide a detailed explanation as to what steps were taken by TQL and counsel to locate the documents.[1] *Id.*

On September 6, 2013, TQL filed its "Explanation of Discovery Efforts," wherein TQL provided the following with regard to the requested performance evaluations:

> Plaintiff Bradley Bresser sought various performance evaluations that were completed by TQL during his employment with the company. Several of those evaluations were maintained in Bresser's personnel file, and those were produced with that personnel file in August 2013.
>
> When TQL initially sought to determine whether the company had any additional performance reviews regarding Bresser, TQL human resources personnel (Laura Kramer), acting at the direction of TQL in-house counsel Chris Brown, investigated the materials maintained on a system provided by a vendor called Epicor. After this review, TQL concluded that no other reviews regarding Bresser were still in the company's possession. Representations to this effect were then made to Bresser's counsel.
>
> As TQL was responding to the Court's August 30 Order with regard to Bresser's evaluations, it was determined that five (5) additional performance reviews relating to Bresser could be obtained through Epicor. The company's initial inability to find these documents within the Epicor system relates in part to a transition that took place beginning in 2010, when TQL switched to Epicor from a different vendor (iVantage) for maintaining records such as the performance reviews. To date, TQL continues to discover that some of the documents that were previously electronically available in iVantage did not fully or cleanly transfer over to Epicor. This occurred with discovery in this case. It was not clear that the full performance reviews – some of which pre-dated the company's transition from iVantage to Epicor – were in fact available within that system. In fact, after further investigation, it was determined that the full personal reviews in iVantage had not fully transferred over to Epicor. Consequently, TQL had to pull the documents from both sources to ensure it obtained complete copies of the performance evaluations.
>
> TQL apologizes to the Court and to Bresser for not initially realizing the fact that the performance evaluations had not fully transferred from the old system to the new system, which has now been corrected.

---

[1] The August 20, 2013 Order also addresses discovery issues that are irrelevant to the instant motion.

2

(Doc. 19 at 1-2).

Plaintiff subsequently filed the instant motion for sanctions asserting that TQL's above explanation does not justify its repeated representations that it was not in possession of any other performance evaluations of plaintiff. (Doc. 21 at 3). Plaintiff characterizes the late discovery of the five additional performance evaluations as "highly dubious," noting that TQL located the documents only after being directed by the Court to explain its discovery efforts despite repeatedly representing to plaintiff's counsel and the Court that no further evaluations were in its possession. *Id.* Plaintiff requests that the Court severely sanction TQL for making misrepresentations to the Court and for failing to timely locate and disclose the evaluations.

In his supplemental memorandum, plaintiff contends that TQL engaged in additional sanctionable conduct. (Doc. 29). Specifically, plaintiff asserts that TQL failed to produce discoverable performance evaluations of and documents regarding discipline actions taken against other TQL employees in violation of the August 20, 2013 Order. (Doc. 29 at 2-5). Plaintiff supports his request with copies of communications between counsel for plaintiff and TQL that reflect plaintiff's numerous attempts to secure the discovery that is the subject of the motion. *See* Doc. 21, Ex. A; Doc. 29, Exs. B-F. Plaintiff contends that TQL should be sanctioned in light of the above asserted misrepresentations and the unjustified delays in providing still insufficient responses to plaintiff's discovery requests. Plaintiff asserts that TQL's conduct has prejudiced him by: (1) delaying depositions which created a domino effect leaving plaintiff unable to secure deposition transcripts until shortly before the deadline for responding to TQL's summary judgment motion;[2] (2) disadvantaging plaintiff's counsel in his preparation for and conducting depositions; and (3) requiring plaintiff's counsel to expend

---

[2]The Court notes that plaintiff has requested and received an extension of time by which to respond to TQL's motion for summary judgment. *See* Doc. 34).

significant time in his attempts to obtain discoverable documents. (Doc. 29 at 7).

Plaintiff seeks the following sanctions:

1. That Defendant's Motion for Summary Judgment be stricken, and that the parties be ordered to trial as currently scheduled in December.

2. That the jury be instructed at trial concerning Defendant's breach of its discovery obligations, and its violations of the court's Orders.

3. That Defendant be ordered to pay the attorney's fees of Plaintiff's counsel associated with Defendant's delinquent discovery, the Court's discovery conference, Plaintiff's efforts to obtain compliance with the Court's orders, and the pending request for sanctions.

4. That Defendant be found in contempt of court for its multiple failures to comply with the Court's August 30th Order, with appropriate fines and/or penalties imposed for the contempt.

5. That the Court appoint special counsel, at Defendant's expense, to oversee and direct Defendant's responses to those discovery requests that remain outstanding, and to comprehensively examine Defendant's records to determine the accuracy and completeness of all of Defendant's past discovery responses.

6. That the Court reserve the imposition of additional sanctions, including default, in the event further misconduct occurs or is discovered.

(Doc. 29 at 10). Plaintiff asserts the Court has the authority to issue these sanctions under Fed. R. Civ. P. 37(b)(2)(A), 28 U.S.C. § 1927, and its inherent authority to sanction bad faith conduct in litigation.

TQL responds that sanctions are inappropriate because its prior misrepresentations that it was not in possession of further performance evaluations was based on its belief that none existed and that, upon learning of the additional evaluations, it worked promptly to correct its error and tender the late-discovered documents to plaintiff. TQL further asserts plaintiff has suffered no prejudice from the brief delay as the District Judge granted his request for an extension of time to respond to its motions for summary judgment. Lastly, TQL contends that plaintiff's assertions that TQL has acted in bad faith are based solely on his suppositions and are

4

not grounded in fact. TQL therefore requests that the Court deny plaintiff's motion for sanctions in its entirety. (Doc. 33).

**II. Standard**

Fed. R. Civ. P. 37 provides for sanctions where a party "fails to obey an order to provide or permit discovery . . . ." Fed. R. Civ. P. 37(b)(2)(A). The imposition of such sanctions is a matter committed to the Court's discretion. *Nat'l Hockey League v. Metro Hockey Club*, 427 U.S. 639, 642 (1976); *Maerki v. Wilson*, 53 F.3d 331; *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985 (6th Cir. 1988). In assessing the appropriateness of issuing such sanctions, the Court should consider the following factors: (1) whether the party's failure to provide discovery was willful or in bad faith; (2) whether the failure to provide the discovery prejudiced the opposing party; (3) whether the party was warned that sanctions could result from its failure to provide the discovery; and (4) whether less drastic sanctions were first considered or imposed. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997).

Section 1927 of the Title 28 of the United States Code further provides for the imposition of sanctions in the form of costs, expenses, and attorneys' fees where an attorney unreasonably and vexatiously "multiples the proceedings." 28 U.S.C. § 1927. Sanctions under § 1927 are appropriate when counsel "objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Whether to impose sections under § 1927 is within the sound discretion of the Court. *Jones v. Ill. Cent. R.R.*, 617 F.3d 843, 850 (6th Cir. 2010).

## III. Resolution

For the following reasons, plaintiff's motion for sanctions under Fed. R. Civ. P. 37 is denied.

First, given the record before the Court, there is no evidence that TQL acted willfully or in bad faith in failing to earlier provide the requested performance evaluations to plaintiff. Plaintiff has provided no evidence demonstrating that the representations made by TQL or its counsel are false.[3] Indeed, plaintiff's argument is based entirely on the circumstances surrounding TQL's late discovery of the requested reviews: "[a]fter repeatedly telling [p]laintiff <u>and</u> the Court that it had produced <u>all</u> the evaluations it had, [TQL] miraculously found five others just <u>days</u> after being ordered by the Court to <u>explain</u> its highly dubious claim that it had provided everything it had." (Doc. 21 at 3) (emphasis in original). While plaintiff characterizes this late-discovery as "highly dubious," the undersigned does not have reason to doubt TQL's explanation. (Doc. 19). It is entirely plausible, even expected, that TQL would have discovered additional documents while researching its response to the August 30, 2013 Order. Indeed, the purpose of the Order was to ensure that all avenues for locating plaintiff's performance evaluations were explored. TQL represents that during its investigation, it learned that certain documents were not cleanly transferred over to its new record maintenance system after a switch in vendors. TQL was able to find the new evaluations only by combing through both the new and old databases. (Doc. 19 at 1-2). While TQL and its counsel were remiss to not engage in this extensive search earlier, the facts before the Court do not demonstrate that they acted in bad

---

[3]Plaintiff argues that TQL's explanation that it transferred to a new record keeping system in 2010 is without substance as TQL's Human Resources representative, Laura Kramer, had no trouble finding plaintiff's performance reviews when she looked for them in mid-2011. (Doc. 35, citing Ex. B, Kramer Depo. at 53-58; Doc. 21, Ex. B). Ms. Kramer's testimony is not so clear. She testified that she would have had to look at plaintiff's manual file and electronic file to review his performance evaluations, but she could not recall if she looked at every performance review or only the recent ones. (Doc. 35, Ex. B at 55, 57). Her testimony does not indicate she looked at every performance review generated for plaintiff.

6

faith.

Second, plaintiff has not established that TQL's conduct has prejudiced him. While plaintiff asserts that TQL's delayed disclosures prejudiced him by depriving him of necessary time to respond to its summary judgment motion, as noted above, this prejudice was avoided when plaintiff's requested extension of time to respond was granted by Judge Spiegel. *See* Doc. 34. Plaintiff also asserts he was disadvantaged by not having all the necessary materials during depositions; yet, plaintiff has not explained how the depositions would have proceeded differently or what information he would have obtained had he been in possession of the late-disclosed documents during the depositions. Further, plaintiff did not raise this issue with the Court or request an extension of time until he received the relevant documents. Rather, he opted to proceed with the deposition as planned. While the Court acknowledges that plaintiff was entitled to the documents, the facts do not demonstrate that plaintiff suffered more than *de minimis* prejudice. Insofar as plaintiff's counsel claims TQL's delay caused him to spend significant time working on these discovery issues, counsel has not demonstrated that he has expended an inordinate amount of time on discovery in this case such that TQL should be sanctioned.

Third, TQL has not received any prior warning that it may be subject to sanctions as a result of its late discovery disclosures. This is not a situation where a party has engaged in a history of bad faith litigation tactics. This discovery dispute is the only instance in this matter requiring Court intervention and counsel for both parties were substantially justified in their positions as to the discoverability of the documents at issue. The lack of notice to TQL that it may be sanctioned for its late disclosures weighs against granting plaintiff's motion.

The undersigned also notes that in the August 30, 2013 Order upon which plaintiff's

sanction request is premised, the Court did not specifically require TQL to produce any of plaintiff's performance evaluations. *See* Doc. 18. The Order simply required TQL to provide an explanation of its efforts to locate responsive evaluations; thus, the late disclosure of plaintiff's performance evaluations is not sanctionable under Rule 37(b). *See Marie v. American Red Cross*, No. 2:11-cv-474, 2013 WL 1183328, at *2 (S.D. Ohio Mar. 20, 2013) (Rule 37 only provides a remedy where party fails to comply with court order to provide discovery, not simply to redress discovery violations committed by such party) (citing *Sokos v. Hilton Hotels Corp.*, 283 F. Supp.2d 42, 55 (D.D.C. 2003)).

To the extent plaintiff asserts TQL should be sanctioned under Rule 37(b) for not tendering certain performance evaluations of plaintiff's peers at TQL, *see* Doc. 18 at 2 (ordering TQL to provide peer evaluations by September 6, 2013), and for not producing "corrective action" documents for the 11 dispatchers identified by TQL as being discharged for cause or asked to resign for cause, the undersigned finds that the above factors weigh against the entry of sanctions. TQL represents that it complied with the Order by producing responsive documents on September 6, 2013, and that an additional supplementation was made two days after plaintiff's counsel requested further documents when TQL investigated the list of employees provided by plaintiff's counsel. (Doc. 33 at 1-2). TQL asserts that a total of 12 pages of documents were produced that were previously missed due to TQL's internal record keeping system, but that the remaining files requested by plaintiff fell outside of the relevant time period. TQL also states it produced some corrective action documents for other Logistic Support Specialists (dispatchers) in August 2013. The facts before the Court do not establish that TQL acted in bad faith such that it should be sanctioned. Accordingly, plaintiff's request for Rule 37(b) sanctions is denied.

Plaintiff's request for § 1927 sanctions is also denied. Plaintiff has provided no evidence to the Court from which it can discern that counsel for TQL has vexatiously litigated this matter or fallen short of his obligations to the bar with the purpose of delaying it from proceeding to trial. *See* 28 U.S.C. § 1927; *Red Carpet Studios Div. of Source Advantage*, 465 F.3d at 646. In the absence of any evidence demonstrating such conduct, an award of § 1927 sanctions is unjustified.

For the above reasons, plaintiff's motion for sanctions (Doc. 21) is **DENIED**.

Nevertheless, while the conduct in this case does not warrant sanctions for the reasons discussed above, plaintiff has raised legitimate concerns about TQL's record keeping system and the diligence with which it has searched for responsive discovery, particularly with respect to the performance reviews of plaintiff's peers and the corrective action documents for the dispatchers terminated for cause between August 1, 2007 and July 31, 2011. With respect to the performance reviews of other dispatchers, TQL has failed to advise which of the 20 individuals identified by plaintiff in his email of September 20, 2013, do not qualify as "dispatchers" and which ones did not receive performance reviews. With respect to the 11 dispatchers terminated for cause during the relevant time period, plaintiff states that TQL has not produced the corrective action information or documentation and it is not clear whether TQL has since supplemented its responses to do so. In the interests of justice, plaintiff is entitled to this information. Therefore, the Court will require TQL to supplement its discovery responses to plaintiff, within **fifteen (15) days** of the date of this Order, to:

1. Identify which of the 20 individuals identified by plaintiff in his email of September 20, 2013, do not qualify as "dispatchers" and state the reasons why;

2. Produce the performance reviews of other dispatchers, and to the extent any such reviews do not exist, advise plaintiff of such and the steps taken to locate the requested evaluations; and

3. Produce corrective actions documents for the 11 dispatchers terminated for cause during the relevant time period.

Failure to comply with this Order may result in the imposition of sanctions.

**IT IS SO ORDERED.**

Date: 11/18/13

Karen L. Litkovitz
United States Magistrate Judge