UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRADLEY S. BRESSER,                  :
                                     :   NO. 1:12-CV-00720
          Plaintiff,                 :
                                     :
     v.                              :
                                     :   **OPINION & ORDER**
TOTAL QUALITY LOGISTICS,             :
                                     :
          Defendant.                 :
                                     :
                                     :

        This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 23), Plaintiff's Response (doc. 45), and
Defendant's Reply (doc. 46).  For the reasons indicated herein, the
Court DENIES Defendant's motion.

**I. BACKGROUND**

        Plaintiff Bradley Bresser ("Bresser") began working with
Defendant Total Quality Logistics ("TQL") in November 2005 (doc.
1).  TQL is a freight brokerage business that matches the needs of
businesses which ship products to truck drivers and carriers who
haul the freight (doc. 23).  Plaintiff started his job with TQL in
logistics support, moved to a broker role, and later, in 2007
returned to a logistics support role (docs. 1, 23, 46).
Plaintiff's role essentially meant he served as a dispatcher,
communicating with truck drivers, account executives, and
supervisors to identify and solve problems with freight shipments
during night and weekend hours (docs. 23, 46).

        Prior to starting with TQL, Plaintiff had been diagnosed
in 2002 with social anxiety disorder by Dr. Dagenbach, who treated

Plaintiff with medication and psychotherapy (doc. 45)[1]. Plaintiff remained on medication during his entire employment with TQL, indicating that without such anti-anxiety medication, he would be unable to work outside the home (Id.). While working for TQL, Bresser, whose last seven reviews from four different supervisors were quite good, took efforts to work in secluded areas, claims he increased his medication usage, and at one point even offered a co-worker money to switch work stations to be in a more secluded area (Id.).

Plaintiff contends that due to good performance, he was given the privilege of working from home ("telecommuting") beginning in 2008 (Id.). According to Defendant, working from home was permitted on a trial basis so long as, under an agreement, Plaintiff would improve in productivity by twenty percent (doc. 23). Defendants indicate they warned Plaintiff previously, in March 2010 that he was losing the privilege (Id.). Plaintiff's supervisor Mark Funk reconsidered the decision after Plaintiff expressed he would increase his work volume (Id.). By the following summer his supervisor Beulah Runions stated in an evaluation that "[Plaintiff][h]as really gotten on board with the

---

[1]The Court notes that in its Reply Defense Counsel refers to Plaintiff's "social anxiety" in quotes no less than thirteen times. The Court takes judicial notice of the existence of such a condition, which is explained by the National Institute of Mental Health at http://nimh.nih.gov/health/topics/social-phobia-social-anxiety-disorder/index.shtml, see also, American Psychiatric Association. Social Anxiety Disorder, 300.23, pp. 202-08. In Diagnostic and Statistical Manual of Mental Disorders (5th ed.), Arlington VA: American Psychiatric Publishing (2013).

direction the company is going...he demonstrates commitment and dedication. . .Brad is second in highest calls handled" (doc. 45).

In March 2011, Defendant indicates Plaintiff was warned for not following policy in having given certain information to a truck driver, and for not reading notes associated with a shipment (doc. 23). In June, Plaintiff missed another note regarding a shipment and improperly issued an electronic payment; later Plaintiff missed an email regarding a shipment (<u>Id</u>.). Runions addressed the missed notes as "coaching issues," along with concerns regarding Plaintiff's failure to store bills of lading in an electronic system as per policy, and Plaintiff's having provided his phone extension to a truck driver, against policy (<u>Id</u>.).

Funk took note of Runions' concerns, and after reviewing Plaintiff's call volume, decided that Plaintiff should no longer be permitted to work from home (<u>Id</u>.). Funk directed Runions to prepare a formal written corrective action as well as to inform Plaintiff he could not work from home (<u>Id</u>.).

In response to being advised he would have to report to work at the office, Plaintiff sent an email on June 17, 2011 to Mark Funk in which he first disclosed his social anxiety (<u>Id</u>.). Plaintiff stated that prior to working from home, he placed file folders on top of the office dividers where he worked in the office, to shield himself from view due to serious anxiety (<u>Id</u>.). Plaintiff mentioned the Americans with Disabilities Act and indicated that returning to the office would be "devastating."

-3-

(<u>Id</u>.).

Given Plaintiff's request for accommodation, Funk placed Plaintiff in an isolated work station (<u>Id</u>.).  Plaintiff indicated that he would try to work there but characterized the move as a "temporary fix for the ultimate problem" (<u>Id</u>.).

Plaintiff continued to communicate with Defendant regarding accommodation and on June 28 he took his concerns to Gary Carr, a former head of Plaintiff's department, and the company's human resources representative Ms. Kramer (doc. 45).  The next day, Plaintiff expressed again to Carr that it was very difficult for him to work at Defendant's Edison facility, where he was assigned, and Plaintiff requested a transfer if telecommuting could not be reinstated (<u>Id</u>.).

On July 5, Defendant requested from Plaintiff a "medical release," and a "current assessment of your condition by a psychologist (<u>Id</u>.).  By email on July 8, 2011, Plaintiff rejected proposed accommodations and refused further dialogue until he could see a particular psychologist (<u>Id</u>.).  On July 16, Plaintiff gave Defendant a letter from psychologist Phillip Hester that indicated Dr. Hester had first treated Plaintiff in 2006, that Plaintiff had resumed treatment, and that working in the office was "detrimental" to Plaintiff's progress (<u>Id</u>.).  Plaintiff ultimately proposed the best accommodation for his condition to be returning to a work-from-home arrangement (<u>Id</u>.).

According to Defendant, Plaintiff failed to follow policy

-4-

in July, including failing to call a broker about a driver needing help in finding a pick-up location (<u>Id</u>.).  Funk gave Plaintiff a written warning over such failure (<u>Id</u>.).  A week later, Funk found that Plaintiff did not call a broker about a driver reporting he was waiting for part of a load that was not yet available and he had concerns about being over the weight limit (<u>Id</u>.).  Funk indicates he concluded Plaintiff was not following policy, and he therefore terminated Plaintiff's employment as of July 18, 2011 (<u>Id</u>.).

Plaintiff brought his Complaint in September 2012, alleging Defendant violated the Americans with Disabilities Act and Ohio Revised Code §§4112.02 and 4112.99 by 1)firing Plaintiff because of his disability, or because it regarded him as disabled, 2) firing him in retaliation for seeking an accommodation of his disorder; and/or 3) firing him in retaliation for expressing opposition to what he believed was disability discrimination in his workplace (doc. 1).  Defendant filed its motion for summary judgment, contending Plaintiff does not have a disability and it did not regard him as disabled, that Plaintiff cannot establish a prima facie case of disability discrimination, and that Plaintiff cannot show its proffered reasons for terminating him were pretextual (doc. 23).  Plaintiff has filed his Response (doc. 45), and Defendant its Reply (doc. 46) such that this matter is ripe for the Court's consideration.

-5-

**II. STANDARD**

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir.

1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A</u>., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See <u>Celotex</u>, 477 U.S. 317; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of <u>material</u> fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment."  <u>Anderson</u>, 477 U.S. at 247-48 (emphasis added); <u>see generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Anderson</u>, 477 U.S. at 252; <u>see also Gregory v. Hunt</u>, 24 F.3d 781, 784 (6th Cir. 1994).  Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and

proceed to trial on the merits. <u>Moore v. Philip Morris Cos., Inc.</u>, 8 F.3d 335, 339-40 (6th Cir. 1993); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324; <u>Guarino</u>, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of his claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." <u>Guarino</u>, 980 F.2d at 405, quoting <u>Inter-Royal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. <u>See</u> <u>McDonald v. Union Camp Corp.</u>, 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. <u>See</u> <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. <u>See</u>

Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. DISCUSSION

### A.  Applicable Law

        The Americans with Disabilities Act ("ADA") was enacted to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment."  42 U.S.C. § 12112(a).  In order to establish a prima facie case of disability discrimination, a plaintiff must show that (1) he is "disabled" as contemplated by the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodations for his disability; and (3) he suffered an adverse employment decision as a result of this disability. See, e.g., Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002), Watson v. Ciena Healthcare Mgmt., No. 11-15461, 2013 U.S. Dist. LEXIS 141872, *19-21 (E.D. Mich. August 13, 2013).  Should Plaintiff fail to establish a factual dispute as to any one of these elements of his prima facie case, summary judgment would be warranted in Defendant's favor.  Merely having a physical or mental impairment does not render one disabled under the ADA. MX Group, Inc. V. City of Covington, 293 F.3d 326, 337 (6th Cir. 2002).  Rather, the Act defines a disability as any of the

-9-

following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "'Major' in the phrase 'major life activities' means important...and thus refers to those activities that are of central importance to daily life;" the accompanying regulations and interpreting federal courts have determined that the term includes performing manual tasks, caring for oneself, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. 1630.2(i). The question of whether a Plaintiff is regarded as having such an impairment, under the third prong of the statute, ordinarily is not one to be decided on summary judgment, as it involves a determination of state of mind that is more appropriate for the jury than for the judge. <u>Ross v. Campbell Soup Co.</u>, 237 F. 3d 701, 709 (6th Cir. 2001).

Once a Plaintiff establishes a <u>prima</u> <u>facie</u> case of disability discrimination, Defendant must offer a legitimate nondiscriminatory reason for its adverse action. If the employer satisfies this burden, then Plaintiff must produce evidence showing the proffered explanation is pretextual. <u>Hendrick v. Western Reserve Care System</u>, 355 F.3d 444, 452-453 (6th Cir. 2004). The same standards applicable to Plaintiff's ADA claim apply to his claims under Ohio disability law, O.R.C. § 4112.02(A).

-10-

<u>City of Columbus Civil Serv. Commission v. McGlone</u>, 82 Ohio St.3d 569 (1998).

**B.  The Parties' Briefing**

Defendant argues Plaintiff does not have a disability, and that it did not regard him as disabled (doc. 23).  Defendant proffers evidence that Plaintiff engaged in activity outside of work, including working as a disc jockey ("DJ"), that shows he was not limited in any major life activity (doc. 23).  Defendant contends Plaintiff has no "record" of a disability based on the fact that Plaintiff has held some eight different jobs requiring contact with co-workers and the general public (<u>Id</u>.).

Defendant next attacks Plaintiff as unqualified, based on its position that Plaintiff did not follow its policies (<u>Id</u>.).  Defendant argues Plaintiff cannot show anything beyond temporal proximity to prove disability discrimination, because the facts show he was under increased scrutiny before he revealed his social anxiety disorder (<u>Id</u>.).

Defendant further argues Plaintiff cannot show its reasons for his termination were pretext (<u>Id</u>.).  It claims Plaintiff cannot overcome its honest belief regarding his noncompliance with company policy (<u>Id</u>.).  Finally, it argues Plaintiff cannot show other employees had a pattern of policy violations and were treated more favorably (<u>Id</u>.).

Plaintiff responds that the objective evidence of his employee evaluations show he was an outstanding employee for years,

and after he disclosed in June 2011 that he had a mental impairment and sought accommodation, he was fired within thirty days (doc. 45). Plaintiff indicates record evidence shows Funk was disdainful of Plaintiff's disability, regularly communicating to Ms. Kramer about Plaintiff's DJ work (Id.).

Plaintiff argues a jury could reasonably conclude he has a disability, that without medication, substantially limits him in working and in interacting with others (Id.).  Moreover, Plaintiff contends he can prevail because he was regarded as disabled (Id.). Plaintiff contends a reasonable jury could find he was qualified to perform the essential functions of his job based on his track record of good evaluations (Id.).

Plaintiff citing A.C. v. Shelby County Bd. Of Educ., 711 F.3d 687, 699 (6th Cir. 2013), Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008), contends the temporal proximity between his asking for accommodation and his termination can be enough to create an inference of a causal connection (Id.).  In any event, Plaintiff argues, there is record evidence that others who violated policy were not fired (Id.).  A reasonable jury could find Defendant's stated reason pretext, argues Plaintiff, because for one thing it is categorically false that Plaintiff ever admitted he failed to follow policy with the call Defendant used to justify the termination (Id.).  Plaintiff further contends that Defendant failed to follow its regular process with warnings and suspension, skipping over steps in Plaintiff's case that it took with regard to other employees (Id.).  Plaintiff names others: Ril Beatty, Joshua

-12-

Johnson, Briana Steele, Carl Roehm, and Randy Ehemann, all of whom made mistakes but received more process, and were not terminated (Id.). Plaintiff contends that a jury could note he got his seventh straight excellent evaluation but then was fired six and a half months later, and reasonably conclude his manager treated him worse than his peers due to disdain for Plaintiff's disability and Plaintiff's assertion of his legal rights (Id.).

Defendant replies that in its view, Plaintiff has failed to proffer evidence regarding how his untreated social anxiety would affect a major life activity (doc. 46). Defendant cites to deposition testimony in which Plaintiff himself indicated he did not know, but that he would be "like a turtle without its shell" (Id.). Defendant contends Plaintiff contradicted himself by stating in his deposition it would be hard to know how he would be without medication, while in his declaration he indicates he would get shaky hands, would stutter, and would have a hard time making eye contact (Id.). Defendant further argues that Plaintiff's case for being regarded as disabled must fail because in his briefing Plaintiff argues Funk viewed his condition with disdain, not believing Plaintiff was disabled at all (Id.). In the balance of its Reply, Defendant reiterates its view that Plaintiff was not qualified, and takes the position that an employer's failure to follow every step of a progressive discipline policy does not necessarily prove pretext (Id.). Finally, Defendant contends that though Plaintiff cites to five other employees he "fails to provide any context for their overall employment situation," and "fails to show any of these

-13-

employees had the long history he had of making mistakes, committing policy violations, blaming others, or inexplicably claiming that shipments were not urgent" (Id.).

## C. Discussion

Having reviewed this matter, the Court does not find Defendant's motion well-taken. A reasonable jury could find that Plaintiff qualified as disabled due to his social anxiety disorder which limits his ability to work and interact with others. The record shows Plaintiff has been treated for such condition for a decade before filing his Complaint, that he was on medication, and medical professionals indicated he would have challenges in an office setting. A jury could find such evidence shows Plaintiff has a record of a disability. Whether Defendant regarded Plaintiff as disabled is also a jury question. Ross, 237 F. 3d 701, 709. Of course, a jury could, as Defendant contends, be persuaded that Plaintiff functioned in social settings such as a DJ, thus rejecting Plaintiff's claim of disability.

The Court finds no genuine question that Plaintiff was qualified to do his job. Plaintiff worked for Defendant for more than five years, receiving positive evaluations from four different supervisors. The focus at this stage of the analysis should be on Plaintiff's objective qualifications, such as his experience in the particular type of work and demonstrated possession of the required general skills. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575-76 (6th Cir. 2003). As the prima facie case is not intended to be burdensome, searching analysis at this stage on

whether a plaintiff is "qualified" is improper. <u>McCrory v. Kraft</u> <u>Food Ingredients</u>, No. 94-6505, 1996 U.S. App. LEXIS 26305 *14 (6th Cir. Oct. 3, 1996).

The Court further finds a factual dispute with regard to the telephone call Defendant indicates triggered Plaintiff's termination. Plaintiff contends it is categorically untrue that he admitted to not following procedure, and proffers evidence that Runions could not answer how Plaintiff had violated policy. A jury might find such reason offered for Plaintiff's termination lacking a basis in fact when the record shows other employees violated policy and were not fired. Plaintiff has signaled that some five similarly-situated employees were treated differently, and a jury might find Defendant's proffered reason for his termination pretext. A jury might find Defendants skipped steps in warning Plaintiff that it accorded to others, such that it terminated him on a fast-track, annoyed with his asserting rights with regard to his disability.

Finally, the Court finds well taken the position that Funk may have viewed Plaintiff's condition with disdain, based on email comments regarding Plaintiff's work as a DJ. The Court sees further disdain by counsel in the Reply brief: referring to Plaintiff's "long history of policy mistakes" (when Plaintiff's evaluations were good up to January of the year he was fired), referring to Plaintiff's "social anxiety" in quotes, arguing Plaintiff was not qualified for his job, and looking for a contradiction in Plaintiff's deposition. Plaintiff stated without his medication he would be like a turtle without a shell. Such metaphor is consistent

with statements in his declaration.

**IV.  CONCLUSION**

   The Court finds that a reasonable jury could find Plaintiff qualified as disabled due to his social anxiety disorder. His firing from Defendant's employ came only weeks after he disclosed his condition to Defendant and sought accommodation.  A jury could conclude Defendant retaliated against Plaintiff for impermissible reasons, rather than for lack of compliance with policy.

   Accordingly, the Court DENIES  Defendant's Motion for Summary Judgment (doc. 23).  The Court further sets this matter for final pretrial conference on July 30, 2014 at 2:00 P.M., and for a four-day jury trial to commence on August 19, 2014, on an on-deck basis.


   SO ORDERED.


Dated: May 8, 2014    s/S. Arthur Spiegel
            S. Arthur Spiegel
            United States Senior District Judge

-16-